UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MICHAEL MCSHERRY and LISA PALMA MCSHERRY,<br><br>*Plaintiffs/Relators*,<br><br>-against-<br><br>SLSCO, L.P. (DBA SLSCO, LTD. AND/OR SULLIVAN LAND SERVICES, LTD.); TODD P. SULLIVAN; JOHN R. SULLIVAN; WILLIAM W. SULLIVAN; BAUMGARDNER HOUSE RAISING, LLC (DBA BAUMGARTNER HOUSE LIFTING); ANDREW W. BAUMGARDNER; THE CITY OF NEW YORK; THE NEW YORK CITY DEPARTMENT OF BUILDINGS; THE NEW YORK CITY DEPARTMENT OF DESIGN AND CONSTRUCTION; THE NEW YORK CITY MAYOR'S OFFICE OF HOUSING RECOVERY; NEW YORK CITY BUILD IT BACK; and JOHN DOES NUMBER ONE THROUGH TEN, fictitious names, real names unknown, individuals or entities submitting or facilitating False Claims as set forth herein;<br><br>*Defendants*. | 18-CV-5981 (ARR) (SLT)<br><br>NOT FOR ELECTRONIC<br>OR PRINT PUBLICATION<br><br>**OPINION & ORDER** |

ROSS, United States District Judge:

Michael McSherry and Lisa Palma McSherry ("the McSherrys" or "the Relators") bring this action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 187 *et seq*. Now before me is a motion to dismiss the McSherrys' *qui tam* claims against the City of New York ("the City")[1] for failure to state a claim or plead fraud with the requisite particularity. Because the Relators have

---

[1] The City correctly contends that named defendants New York City Department of Buildings, New York City Department of Design and Construction, New York City Mayor's Office of Housing Recovery, and New York City Build it Back are not suable entities, and that the only proper defendant is the City itself. Def.'s Mot. Dismiss 1 n.1 ("Def.'s Mot."), ECF No. 39; *see Friedman v. N.Y.C. Admin. for Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012) ("City agencies are not suable entities, and thus, the proper defendant is the City of New York.").

failed to state a claim under 31 U.S.C. § 3729(a)(1)(A) or § 3729(a)(1)(C), and because the City is not subject to suit under the NYFCA, I grant the City's motion and dismiss the claims against the City.

## BACKGROUND

After Hurricane Sandy damaged thousands of homes in 2012, Congress allocated funds to the City so that it could elevate homes vulnerable to damage from future hurricanes. Compl. ¶¶ 32–34. The McSherrys applied to have their home elevated and the City approved their application, assigning defendants SLSCO, L.P. and Baumgardner House Raising (collectively, along with Todd P. Sullivan, John R. Sullivan, William W. Sullivan, and Andrew W. Baumgardner, "the Contractors") to perform the necessary work. *Id*. ¶¶ 25, 35–36.

The City's internal processes required the Contractors to document the work to be performed and the materials to be used in a Scope of Work ("SOW"); each SOW reflected the monetary value of the materials and labor necessary for the work (the "Negotiated Cost"), and a formula dictated that the Contractors would be paid twice that amount. *Id.* ¶¶ 38–39, 43–46, 46 n.7. These internal processes also required the Contractors to set forth any change to a SOW in an updated SOW or a Change Order, and required the City to review any variance in work or the amount the Contractors would be paid. *Id.* ¶¶ 40, 47.

The McSherrys contend that the Contractors fraudulently applied for and received payment for work that they either did not perform, performed incorrectly or with deficient materials, or for which they received duplicative payments. *Id.* ¶ 49. They allege that the Contractors installed wooden stairs even though the SOW reflected metal stairs, and that the Contractors applied for and received payment for installing the more expensive metal stairs. *Id.* ¶¶ 52–65. The Contractors applied for and received payment for installing new fiber cement siding, the Relators allege, but

in fact installed only excess scrap siding from another home. *Id.* ¶¶ 66–69. Despite never installing shrubs reflected in the SOW, the McSherrys allege, the Contractors applied for and received payment for installing those shrubs; after the Relators successfully demanded that the Contractors install the shrubs, the Contractors applied for and received payment for the shrubs again, rendering that payment duplicative. *Id.* ¶¶ 72–79. The McSherrys allege that although the Contractors applied for and received payment for new smoke detectors, they never installed those detectors. *Id.* ¶¶ 81–85. The Contractors allegedly applied for and received payment for installation of certain siding, but they installed it incorrectly, rendering it not fire resistant and voiding its warranty. *Id.* ¶¶ 87–99. Although the Contractors applied for and received payment for the installation of fire-resistant fiber cement trim, the Relators allege, they in fact installed less expensive, non-fire-resistant material. *Id.* ¶¶ 103–10. Similarly, although the Contractors applied for and received payment for the installation of fireproof taped sheetrock, the McSherrys allege, they installed less expensive, non-fireproof, non-taped sheetrock instead. *Id.* ¶¶ 112–16. Finally, the Relators allege that the Contractors applied for and received payment for the installation of triple-lined flue pipe, but they in fact installed only single-walled flue pipe, which is less expensive and violates the New York City Fire Code. *Id.* ¶¶ 123–34.

    The McSherrys further allege that the City was aware of and facilitated these fraudulent payments. *Id.* ¶ 51. Specifically, they allege that City employees attended a walkthrough that was meant to certify the home's readiness for occupancy and secure the release of money from the City to the Contractors, and that the City in fact certified the home for occupancy despite flaws in the Contractors' work. *Id.* ¶¶ 140, 144, 150. They also allege that they notified the City of the excessive and fraudulent nature of the charges submitted by the Contractors. *Id.* ¶ 148. By paying

claims for work that was either not completed or completed defectively, the McSherrys allege, the City was complicit in the Contractors' purported fraud. *Id.* ¶¶ 151–60.

## LEGAL STANDARD

There are two components to fraud under 31 U.S.C. § 3729(a)(1)(A): The defendant "must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 83 (2d Cir. 2017) (quoting *Hagerty ex rel. U.S. v. Cyberonics, Inc.*, 844 F.3d 26, 31 (1st Cir. 2016)). The defendant must also act knowingly—that is, either with actual knowledge, deliberate ignorance of the truth, or reckless disregard of the truth. 31 U.S.C. § 3729(a)(1)(A); *id.* § 3729(b)(1)(A). "Actual knowledge" refers to "whether a person is aware of information." *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1400 (2023) (quotation marks omitted). "Deliberate ignorance" refers to defendants "who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity." *Id.* "Reckless disregard," meanwhile, refers to defendants "who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Id.* at 1401. In assessing scienter, the FCA is concerned with "what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it." *Id.*

To survive a motion to dismiss when contending that a defendant caused a false claim to be submitted to the government, a relator must allege that the defendant's behavior was a "substantial factor in bringing about [the] filing" of a false claim and that the filing was "a normal consequence of the situation created by that scheme." *U.S. ex rel. Arnstein v. Teva Pharms. USA, Inc.*, No. 13-CV-3702, 2019 WL 1245656, at *27 (S.D.N.Y. Feb. 27, 2019) (quoting *United States*

4

*ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244–45 (3d Cir. 2004)); *see also U.S. ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 195 (S.D.N.Y. Feb. 4, 2016) ("And to 'cause' the false claim to be submitted, it must be the 'natural, ordinary and reasonable consequence[ ] of [one's] conduct.'" (quoting *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008))). To state a claim of conspiracy to violate the FCA under 31 U.S.C. § 3729(a)(1)(C), meanwhile, a relator must allege that "(1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) one or more conspirators performed any act to effect the object of the conspiracy." *United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 48 (E.D.N.Y. 2021) (quoting *United States v. Spectrum Painting Corp.*, No. 19-CV-2096, 2020 WL 5026815, at *15 (S.D.N.Y. Aug. 25, 2020)), *aff'd*, No. 21-2117, 2022 WL 17818587 (2d Cir. Dec. 20, 2022). The first prong of the test for conspiracy requires the relator to allege that the defendant and the entity who submitted the claim "agreed to defraud the government." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016) (quotation marks omitted); *see also United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2016) ("[I]t is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA.")

      Because *qui tam* complaints filed under the FCA are claims of fraud, they are subject to Federal Rule of Civil Procedure 9(b), which requires the pleading party to "state with particularity the circumstances constituting fraud." *Chorches*, 865 F.3d at 81 (quoting Fed. R. Civ. P. 9(b)). Generally, this requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ladas*, 824 F.3d at 25 (quotation marks omitted). A

5

*qui tam* FCA complaint typically must also "provide details of actual bills or invoices submitted to the government." *Chorches*, 865 F.3d at 93. The adequacy of particularized allegations under Rule 9(b), however, is "case- and context-specific," and the Second Circuit has recognized an exception to the typically stringent pleading requirements when such details are "peculiarly within the opposing party's knowledge." *Id.* at 81–82 (quotation marks omitted). Under those circumstances, "pleading is permitted on information and belief," as long as "the relator makes plausible allegations . . . that lead to a strong inference that specific claims were indeed submitted and that information about the details of the claims submitted are peculiarly within the opposing party's knowledge." *Id.* at 82, 93 (quotation marks omitted).

The New York False Claims Act is "closely modeled on the federal FCA," and "New York courts rely on federal FCA precedents when interpreting the NYFCA." *Liss v. Heritage Health & Hous., Inc.*, No. 19-CV-4797, 2023 WL 2267366, at *5 (S.D.N.Y. Feb. 28, 2023) (quotation marks omitted). The state law bars *qui tam* actions against local governments. N.Y. State Fin. Law § 190(2)(a).

## DISCUSSION

The Relators acknowledge that their Complaint fails to allege facts supporting the agreement necessary for their FCA conspiracy claim. Pls.' Opp'n Mot. Dismiss 14 ("Pls.' Opp'n"), ECF No. 37. They similarly recognize that the City is not suable under the NYFCA. *Id.* at 18; *see* N.Y. State Fin. Law § 188(6) (defining local governments immune from suit to include "any New York . . . city"). The sole remaining issue is therefore whether the Relators stated a claim that the

6

City knowingly presented a false or fraudulent claim to the federal government, or caused such a claim to be presented.[2] For the forthcoming reasons, I hold that they have failed to do so.

### I. The complaint fails to sufficiently allege that the City submitted a false claim to the federal government.

The Relators do not contend that the City intended to misapply federal funds when it applied to Congress for Hurricane Sandy funding. Pls.' Opp'n 8 n.10. Rather, they argue that because of the City's subsequent actions or inaction regarding their home, "a false claim now exists." *Id.* This novel theory—that an originally valid claim can later be rendered false—is unpersuasive. Indeed, such a theory is in tension with the Supreme Court's reasoning in *SuperValu*, which emphasized that the FCA is concerned with "what the defendant thought *when submitting the false claim.*" 143 S. Ct. at 1401 (emphasis added); *see also United States ex rel. Gelbman v. City of New York*, 790 F. App'x 244, 248 (2d Cir. 2019) (affirming dismissal of complaint where relator failed "to provide details about the eligibility status of the Medicaid claims *at the time* of their submission to the federal government").

The Relators rely on *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78 (2d Cir. 2012), but that case is distinguishable. There, after a university successfully submitted an initial application for a federal grant, it deviated from the purpose of that grant yet represented in its subsequent renewal applications that nothing had changed since the initial application. *Id.* at 80–84. A jury found the defendants liable based on the renewal applications—*not* based on the initial application—and the Second Circuit affirmed. *Id.* at 85–86, 97. This case, unlike *Feldman*, does not involve subsequent renewal applications. And *Feldman* does not stand for the proposition that

---

[2] The Complaint does not specify this theory; rather, the Relators articulated it for the first time in their pre-motion letter. Because the argument is fully briefed, however, I consider it now in the interest of efficiency.

actions following an initial application, absent any subsequent claims submitted to the federal government, can render that originally truthful application false.

Moreover, even if such a theory were viable, the complaint fails to meet Rule 9(b)'s pleading standards. The Relators have not alleged "details of actual bills or invoices submitted to the government," nor have they alleged that "information about the details of the claims submitted are peculiarly within the opposing party's knowledge." *Chorches*, 865 F.3d at 93. And even if they had alleged the latter, they have pleaded insufficient facts to support a "strong inference" that specific false claims were actually and knowingly submitted. *Id.* At most, the complaint's allegations support an inference that the City was negligent in ensuring the quality of the work provided by its contractors. The fact that the Contractors may have submitted false claims cannot, without more, be imputed to the City: The FCA "requires . . . that the focus in each case be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures." *United States v. Bornstein*, 423 U.S. 303, 312 (1976). In so holding, I am cognizant of the Second Circuit's warning that although Rule 9(b) permits information and belief pleading in *qui tam* actions in certain circumstances, "[t]hat standard must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Chorches*, 865 F.3d at 86 (quotation marks omitted).

## II.  The complaint fails to sufficiently allege that the City caused the Contractors to submit false claims.

The complaint is entirely devoid of particularized allegations that the City's action or inaction was a "substantial factor in bringing about [the] filing" of a false claim by the Contractors or that the filing was "a normal consequence of the situation created by that scheme." *United States ex rel. Arnstein v. Teva Pharms. USA, Inc.*, No. 13-CV-3702, 2019 WL 1245656, at *27 (S.D.N.Y. Feb. 27, 2019) (quotation marks omitted); *see* Fed. R. Civ. Pro. 9(b). Even if such allegations were

8

present, the complaint is insufficient to support an inference that the City acted knowingly, as required by 31 U.S.C. § 3729(a)(1)(A). The Relators' allegation that they "on numerous occasions[] directly notified . . . the City Agencies in person, or by writing, of the excessive and fraudulent nature of charges submitted by the Contractors" is lacking in crucial detail—it does not specify, for example, whether the McSherrys notified the City of these deficiencies before the City approved the release of funds to the Contractors. Compl. ¶ 148. Nor is their allegation that City employees were present at the Walkthrough sufficient to support an inference that the City knowingly facilitated the Contractors' submission of false claims: The complaint contains no details regarding what City employees observed at the walkthrough. *Id.* ¶ 144. Although the FCA "has a liberal scienter requirement" and "no proof of specific intent to defraud is required," a plaintiff must still "state with particularity the specific statements or conduct giving rise to the fraud claim." *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2nd Cir. 1995). Here, the Relators have not alleged specific statements or conduct—such as what they told the City, or what City employees observed—and have therefore failed to plead facts supporting an inference that the FCA's scienter requirement is satisfied.[3]

## CONCLUSION

For reasons set forth above, I conclude that the Relators have failed to state a claim and dismiss their claim against the City under 31 U.S.C. § 3729(a)(1)(A) without prejudice. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically

---

[3] The Relators rely on *United States v. Saavedra*, 661 F. App'x 37 (2d Cir. 2016), for the proposition that FCA claims can be brought regarding federal funds intended to benefit third parties rather than the recipient of the funds itself, Pls.' Opp'n 8–9, but *Saavedra* merely applied this previously recognized rule, and says nothing of what is required for a relator to sufficiently allege causation when alleging that a defendant caused such a false claim to be submitted.

9

grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)."). The Relators' conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) is likewise dismissed without prejudice. Their claim under the NYFCA, meanwhile, is dismissed with prejudice, because amendment could not cure that claim's legal defect and would be futile. *See Williams v. Bank of N.Y. Mellon Tr. Co.*, 13-CV-6814, 2015 WL 430290, at *6 (E.D.N.Y. Feb. 2, 2015) (citing *United States ex rel. Pilon v. Martin Marietta Corp*, 60 F.3d 995, 1000 (2d Cir. 1995)).

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:     September 15, 2023
           Brooklyn, New York