UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, ex rel. MICHAEL
MCSHERRY and LISA PALMA MCSHERRY,

     *Plaintiffs/Relators*,

  -against-

SLSCO, L.P. (DBA SLSCO, LTD. AND/OR SULLIVAN
LAND SERVICES, LTD.); BAUMGARDNER HOUSE
RAISING, LLC (DBA BAUMGARTNER HOUSE
LIFTING); THE CITY OF NEW YORK; and JOHN DOES
NUMBER ONE THROUGH TEN, fictitious names, real
names unknown, individuals or entities submitting or
facilitating False Claims as set forth herein;

     *Defendants*.

18-CV-5981 (ARR) (ST)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Michael McSherry and Lisa Palma McSherry ("the McSherrys" or "the Relators") bring

this action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the

New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 187 *et seq*. I previously granted

the City of New York's motion to dismiss the claims against it, but granted the Relators leave to

replead their claim under 31 U.S.C. § 3729(a)(1)(A). Op. & Order, ECF No. 41. The Relators filed

a First Amended Complaint ("FAC"), ECF No. 46, and now before me is the City of New York's

second motion to dismiss that claim, ECF No. 58. Because the Amended Complaint failed to cure

the defects in the original Complaint, I grant the City's motion and dismiss the claims against the

City with prejudice.

## BACKGROUND

After Hurricane Sandy damaged thousands of homes, Congress allocated funds to elevate

certain homes vulnerable to similar damage. FAC ¶¶ 31–32. In 2013, the City submitted a plan to

the federal government to repair or remediate homes affected by Hurricane Sandy, and the federal Department of Housing and Urban Development ("HUD") approved that plan. *Id.* ¶¶ 33–39. The McSherrys applied to the program created to distribute these funds and the City approved their application, assigning defendants SLSCO, L.P. and Baumgardner House Raising ("the Contractors") to perform the necessary work. *Id*. ¶¶ 22, 24, 43–44, 48. The McSherrys contend that the Contractors fraudulently applied for and received payment for work that they either did not perform, performed "improperly" or with deficient materials, or for which they received multiple payments. *Id.* ¶¶ 63, 66–211. They further allege that the City was aware of the fraudulent nature of the Contractors' claims but paid them anyway. *Id.* ¶ 65. In their Amended Complaint, unlike in their original Complaint, the Relators include particularized allegations that the City was aware of the subpar nature of the Contractors' work because, among other things, the City performed regular monitoring and the Relators informed them of purported problems. *Id.* ¶¶ 87– 89, 103–10, 119, 131, 142–46, 147–57, 189–91, 199–200, 205–09. By paying claims for work that was either not completed or completed defectively, the Relators contend, the City misapplied federal funds and caused the Contractors to submit false claims. *Id.* ¶¶ 216–17, 219–22, 224.

In September 2023, I granted the City's motion to dismiss the claims against it. *See generally* Op. & Order. But I dismissed the Relators' claim under 31 U.S.C. § 3729(a)(1)(A) without prejudice, noting that "[d]istrict courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)." *Id.* at 9–10 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)). The Relators filed their Amended Complaint in November 2023, ECF No. 46, and now before me is the City's fully briefed motion to dismiss the Amended Complaint, ECF Nos. 58–61.

**LEGAL STANDARD**

There are two components to fraud under 31 U.S.C. § 3729(a)(1)(A): The defendant "must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 83 (2d Cir. 2017) (quoting *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 31 (1st Cir. 2016)). The defendant must also act knowingly—that is, either with actual knowledge, deliberate ignorance of the truth, or reckless disregard of the truth. 31 U.S.C. §§ 3729(a)(1)(A), (b)(1)(A). In assessing scienter, the FCA is concerned with "what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it." *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1401 (2023). To survive a motion to dismiss when contending that a defendant caused a false claim to be submitted to the government, a relator must allege that the defendant's behavior was a "substantial factor in bringing about [the] filing" of a false claim and that the filing was "a normal consequence of the situation created by that scheme." *United States ex rel. Arnstein v. Teva Pharms. USA, Inc.*, No. 13-CV-3702, 2019 WL 1245656, at *25 (S.D.N.Y. Feb. 27, 2019) (quoting *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244–45 (3d Cir. 2004)).

**DISCUSSION**

As in their briefing on the motion to dismiss the original Complaint, the Relators advance two theories of liability under the FCA: First, that the City "submitted a false claim to the United States by failing to properly apply the federal funds" that Congress allocated to elevate vulnerable homes; and second, that the City was "aware of the fraudulent (false) nature of the [Contractors'] claims, and thereby caused the [C]ontractors to submit . . . false claims." FAC ¶¶ 2–4. Although the Relators now allege with more specificity the City's awareness of the purported subpar nature

3

of the Contractors' work, they have failed to cure the defects that led me to dismiss their original Complaint.

### I.   The Amended Complaint continues to fail to sufficiently allege that the City submitted a false claim to the federal government.

I previously held that the original Complaint failed to state a claim under the Relators' first theory of liability because it relied on the novel premise that an originally valid claim can later be rendered false—a premise that the Supreme Court rejected in *SuperValu*, which emphasized that the FCA is concerned with "what the defendant thought *when submitting* the false claim." 143 S. Ct. at 1401 (emphasis added); Op. & Order 7–8. The Amended Complaint contains no new allegations about the City's scienter at the time that it submitted its claim to the federal government—that is, when it applied for federal funding in 2013.

The Relators' opposition to the City's motion to dismiss the Amended Complaint now emphasizes that this theory is properly characterized as a "fraudulent inducement" theory of FCA liability. *See* Opp'n Mot. Dismiss FAC 6–11 ("Opp'n"), ECF No. 60. But they characterized this theory the same way in their briefing on the City's previous motion to dismiss—albeit in fewer words—and I rejected it in my original opinion. *see* Op. & Order 7–8; *see also* Opp'n Mot. Dismiss Original Compl. 8 n.10, ECF No. 37 (describing the Relators' theory as a "fraud in the inducement" theory of FCA liability). The Relators have offered no reason for me to rule otherwise here. Fraudulent inducement claims, like all other FCA claims, are concerned with "a defendant's alleged misrepresentations *at the time* the government awarded the contract," and require allegations that the defendant knew at the time that those representations were false. *United States v. Strock*, 982 F.3d 51, 61 (2d Cir. 2020) (emphasis added); *see id.* at 65–68 (analyzing defendants' scienter at the time they made misrepresentations); *see also Supervalu*, 598 U.S. at 752 ("[T]he focus is not . . . on *post hoc* interpretations that might have rendered their claims accurate. It is

4

instead on what the defendant knew when presenting the claim."). The Relators continue to place great emphasis on *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78 (2d Cir. 2012), but I have already held that this case "does not stand for the proposition that actions following an initial application, absent any subsequent claims submitted to the federal government, can render that originally truthful application false." Op. & Order 7–8. Certainly, *Feldman* is an example of a successful fraudulent inducement claim, *see* 697 F.3d at 91—but whether such a claim is theoretically viable and whether the Relators have sufficiently stated such a claim here are distinct questions. Because the Relators have again failed to allege anything about the City's scienter at the time it submitted its claim to the federal government, they have failed to state a claim of fraudulent inducement.

## II. The Amended Complaint continues to fail to sufficiently allege that the City caused the Contractors to submit false claims.

I previously held that the original Complaint did not sufficiently allege that the City caused the Contractors to submit false claims because it was "entirely devoid of particularized allegations that the City's action or inaction was a 'substantial factor in bringing about [the] filing' of a false claim by the Contractors or that the filing was 'a normal consequence of the situation created by that scheme.'" Op. & Order 8 (quoting *Teva Pharms.*, 2019 WL 1245656, at *27). Although the Amended Complaint contains many more particularized allegations about the City's knowledge of the Contractors' purportedly substandard work, it is still completely lacking in allegations regarding proximate cause and foreseeability. Indeed, the Relators' argument appears to hinge on the notion that the City's awareness of the Contractors' unsatisfactory work "thereby caus[ed]" the Contractors to submit false claims—a logical proposition for which they provide no support. Opp'n 21.

Certainly, as I have already discussed, the Relators' allegations that could "support an

inference that the City was negligent in ensuring the quality of the work provided by its contractors." Op. & Order 8. But the FCA requires more. There are other mechanisms for regulating the recipients of federal grants; for example, HUD can recoup funds that were "improperly expended" or advise the City "to suspend disbursement of funds for the deficient activity." 24 C.F.R. § 570.910(b). The Supreme Court has made clear, however, that the FCA is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). Allegations that the City was aware that the Contractors had fallen short of their obligations, without accompanying allegations of proximate cause and foreseeability, are insufficient to state a claim that the City caused the Contractors to submit false claims.

## CONCLUSION

For reasons set forth above, I conclude that the Relators have failed to state a claim and dismiss their claim against the City under 31 U.S.C. § 3729(a)(1)(A). This time, I do so with prejudice: The Relators have already amended their complaint once and in doing so failed to remedy the deficiencies identified in my first opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014).


SO ORDERED.


                                             /s/
                                            Allyne R. Ross
                                            United States District Judge


Dated:        May 5, 2024
                Brooklyn, New York